UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-81420-BLOOM/Reinhart

CATHY COHEN,

    Plaintiff,

v.

BURLINGTON INC.,

    Defendant.
_____/

**ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT**

**THIS CAUSE** is before the Court upon Plaintiff Cathy Cohen's ("Plaintiff") Motion for Final Default Judgment, ECF No. [17] (the "Motion"), on the allegations contained in Plaintiff's Complaint, ECF No. [1] (the "Complaint"). The Court has carefully considered the Motion and all supporting documents, the record in this case, the applicable law, the evidence and testimony presented at the evidentiary hearing and is otherwise fully advised. For the reasons that follow, the Motion is granted in part.

**I.      BACKGROUND**

On October 19, 2018, Plaintiff initiated this action, asserting a negligence claim against Defendant Burlington Inc. ("Defendant"). The claim arises from an incident at Defendant's retail store in Palm Beach County on July 8, 2016. ECF No. [1] ¶¶ 7-8. Plaintiff alleges that one or more tables on display at the store fell toward Plaintiff and struck her, causing severe medical injuries. *Id.* ¶¶ 11-13.

A Clerk's default was entered against Defendant on January 16, 2019, as Defendant failed to appear, answer, or otherwise plead to the Complaint, ECF No. [9], despite having been served,

ECF No. [5]. The Court held an evidentiary hearing on the issue of damages on March 29, 2019 (the "March 29th Hearing"). ECF No. [16]. Plaintiff filed the Motion on March 31, 2019. The Motion is ripe for the Court's consideration.

## II.  DISCUSSION

### a. Liability

If a defendant fails to plead or otherwise defend a complaint filed against it, the Clerk of Court may enter a default against that party. *See* Fed. R. Civ. P. 55(a). Once a default is entered, a plaintiff may seek entry of a default judgment against the defaulting defendant. *See* Fed. R. Civ. P. 55(b). By defaulting, a defendant is taken to admit the well-pleaded allegations of fact in a plaintiff's complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although facts are admitted as true, conclusions of law are not; a sufficient basis to state a claim must still exist in the pleadings before a court may enter a default judgment. *Nishimatsu*, 515 F.2d at 1206.

Under Florida law, a negligence claim has four elements: "a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland, Grp., Inc.,* 680 F.3d 1329, 1339 (11th Cir. 2012) (citing *Curd v. Mosaic Fertilizer, LLC,* 39 So.3d 1216, 1227 (Fla. 2010)).

Here, the well-pled factual allegations of Plaintiff's Complaint properly allege the elements of a negligence claim. The Plaintiff's Complaint alleges, and Defendant admits by default, that on July 8, 2016, the Plaintiff was a business invitee at one of the Defendant's locations in Palm Beach County, Florida. ECF No. [1] ¶ 8. While lawfully and properly on the Defendant's property, the Plaintiff noticed a set of tables of varying heights on display. *Id.* ¶ 9. While exercising due care for her safety, Plaintiff attempted to inspect one of the tables. *Id.* ¶ 11. Unbeknownst to Plaintiff,

the entire set of tables had been clamped or fastened together. *Id.* Plaintiff attempted to inspect one of the tables causing the entire set to fall toward her direction resulting in one or more of the tables striking her. *Id.* ¶¶ 11–12. Instinctively, Plaintiff jumped back and screamed loudly in pain. *Id.* ¶ 12. In doing so, Plaintiff twisted her body, which strained her neck and back. *Id.* The incident caused the Plaintiff to sustain medical injuries. *Id.* ¶ 13.

The Complaint alleges that the Defendant owed a duty of reasonable care to maintain its property in a reasonably safe condition for the safety of business invitees on the premises, including the Plaintiff. *Id.* ¶ 17. However, the Defendant breached its duty owed to Plaintiff by creating a hazardous condition on its property." *Id.* ¶ 18. Further, the Defendant breached that duty by failing to remedy a hazardous condition on its property, which it had knowledge of. *Id.* ¶ 19. Finally, the injury to the Plaintiff was directly and proximately caused by the Defendant's negligence. *Id.* ¶¶ 20–22. As a result of the Defendant's negligence, the Plaintiff suffered injuries. *Id.*

Based on these allegations, Plaintiff has clearly satisfied the elements of a negligence claim against Defendant.

### b. Damages

In order to determine the amount of damage, if any, to which Plaintiff is entitled, the Court may "conduct hearings or make referrals-preserving any federal statutory right to a jury trial-when, to enter or effectuate judgment, it needs to ... determine the amount of damages." Fed. R. Civ. P. 55(b)(2); *cf.* Fed. R. Civ. P. 55(b)(1) ("If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk-on the plaintiff's request, with an affidavit showing the amount due-must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."). The Court

scheduled an evidentiary hearing on this issue of damages and the Defendant was duly notified and failed to appear.

The Plaintiff presented her testimony at the March 29th Hearing. Plaintiff also submitted medical records and medical bills to support her request for damages.

In her Motion, Plaintiff requests $167,399.75 in past medical bills, $42,860.00 in future medical expenses, $3,325.00 in out-of-pocket expenses, and $2,240.00 in lost wages, for a total pecuniary damage award of $215,824.75. Additionally, Plaintiff requests an award of $500,000.00 for past pain and suffering and $250,000.00 for future pain and suffering.[1] Finally, Plaintiff requests pre-judgment interest of $573.75 and post-judgment interest at the statutory rate of 6.57%.

On July 12, 2016, four days after the incident, Plaintiff sought treatment from chiropractor Dr. Jeffrey Zipp for pain in her neck, head, back, and right knee. An MRI of Plaintiff's right knee revealed a torn meniscus. An MRI of Plaintiff's cervical spine revealed a disk bulge and disk herniations. Plaintiff received treatment for her injuries from Dr. Zipp three times per week until August 12, 2016. Plaintiff also treated with Dr. Edwin Maldonado from July 22, 2016 through August 4, 2017. According to Plaintiff's testimony, Dr. Maldonado administered back and neck injections for her pain, which only provided temporary relief. Plaintiff started treating with Dr. Shani Katz on January 11, 2017. Dr. Katz recommended a walking boot, which Plaintiff wore for three months. Dr. Katz also recommended right knee arthroscopy.

Dr. Francisco Colon conducted additional imaging of Plaintiff's spine on April 2017. Dr. Colon found that Plaintiff suffered 25% permanent impairment to her cervical spine. Additionally, on April 24, 2017, Dr. Colon recommended that Plaintiff coordinate care with a chiropractor for

---

[1] At the March 29th hearing, Plaintiff requested $250,000.00 for past pain and suffering and $250,000.00 for future pain and suffering.

physical therapy and palliative care, which will be necessary 4-8 times per month indefinitely at the cost of $100 to $250 per visit.

On June 4, 2019, Plaintiff underwent spinal surgery performed by Dr. Conor Reagan. Plaintiff testified that the surgery was successful. However, as of the March 29th Hearing, Plaintiff's neck pain had improved. Plaintiff continues to have back, knee, and ankle pain. According to Plaintiff's medical records, in 2006 she had neck surgery as a result of injuries sustained in a motor vehicle accident. However, Plaintiff testified that prior to the subject incident, she was in good health and did not have any physical restrictions imposed by a doctor.

Plaintiff submitted medical bills resulting from the subject incident totaling $165,899.75. Additionally, Plaintiff testified that she owes $1,500.00 to Raleigh Radiology for an MRI. Accordingly, Plaintiff incurred $167,399.75 in medical bills from injuries she sustained in the incident.

As to future medical expenses, Plaintiff requests $5,060.00 for surgery on her right knee and $37,800.00 for physical therapy. The evidence before the Court which could support a finding that Plaintiff will require physical therapy is Dr. Colon's recommendation on April 24, 2017 that Plaintiff coordinate with a chiropractor to receive physical therapy for her spinal injuries. However, Plaintiff has not presented any evidence that at any time since April 24, 2017, she sought physical therapy treatment. Additionally, Plaintiff testified that her spinal surgery was successful. Therefore, the Court finds that an award for the cost of future physical therapy is not warranted. Plaintiff is entitled to $5,060.00 for a future right knee arthroscopy, as recommended by Dr. Katz.

Plaintiff contends that due to her injuries, she is also entitled to an award for past pain and suffering in the amount of $500,000.00 and future pain and suffering in the amount of $250,000.00. Plaintiff testified that because of her injuries from the incident she can no longer wear high heels,

5

dance, ski, jog, or engage in many of the other activities she enjoyed prior to the incident. Plaintiff still suffers from knee pain and back pain that radiates into her buttocks. Plaintiff has a scar on her neck from the June 4, 2019 spinal surgery. Considering the extent of Plaintiff's injuries, Plaintiff's surgery, Plaintiff's inability to participate in activities that she enjoyed prior to the incident, and Plaintiff's testimony regarding the other ways that her injuries have affected the quality of her life, the Court concludes that $500,000.00, not $750,000.00, is an appropriate amount for Plaintiff's total past and future pain and suffering.

Plaintiff requests out-of-pocket expenses for transportation to medical providers, travel to Florida for the March 29th Hearing, prescription medications, over-the-counter medications, and the walking boot. The Court finds that Plaintiff is entitled to these claimed expenses, other than the cost of travelling to the March 29th Hearing. Plaintiff chose to file this lawsuit in the Southern District of Florida. Moreover, Plaintiff is not permitted to seek as damages the costs of litigation. Plaintiff is awarded $3,075.00 for her out-of-pocket expenses.

Finally, Plaintiff is entitled to lost wages for 112 hours of missed work following the subject incident. Plaintiff was earning $20.00 per hour at the time. Accordingly, the Court awards Plaintiff $2,240.00 in lost wages.

Plaintiff's total damages are as follows:

>Past Medical Expenses: $167,399.75
>
>Future Medical Expenses: $5,060.00
>
>Past and Future Pain and Suffering: $500,000.00
>
>Out-of-pocket Expenses: $3,075.00
>
>Past Lost Wages: $2,240.00
>
>**Total: $677,774.75**

Plaintiff requests pre-judgment interest on her out of-pocket expenses.  Under Florida law, "[i]t is well settled that a plaintiff is entitled to prejudgment interest when it is determined that the plaintiff has suffered an actual, out-of-pocket loss at some date prior to the entry of judgment." *Alvarado v. Rice*, 614 So. 2d 498, 499 (Fla. 1993).  "The ministerial act of computing prejudgment interest … requires that damages be liquidated as of a date certain."  *Pharmacy Mgmt. Servs., Inc. v. Perschon*, 622 So. 2d 75, 76 (Fla. 3rd DCA 1993).  In the event that a court cannot ascertain the date upon which damages were liquidated, "Florida law supports the proposition that prejudgment interest can be awarded properly from the latest possible date of loss."  *SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 795–96 (11th Cir. 2005).

Plaintiff contends that pre-judgment interest should be calculated from July 8, 2016 – the date of the incident.  However, Plaintiff has failed to provide evidence from which the Court could ascertain the dates that Plaintiff incurred any of her out-of-pocket expenses.

Next, the Court may consider whether it can ascertain the latest possible date of any of Plaintiff's out-of-pocket expenses.  The Court cannot make such a determination with respect to Plaintiff's expenses for prescription medications, over-the-counter medications, or a walking boot.  However, as to the cost of transportation to and from medical providers, based on the evidence before the Court the last medical appointment Plaintiff attended was on June 4, 2018.  Thus, the Court can reasonably conclude that the last possible date Plaintiff incurred expenses for the cost of transportation to and from medical providers was on June 4, 2018.

In Florida, interest rates on judgments are adjusted annually. § 55.03, Fla. Stat. *See Townsend v. R.J. Reynolds Tobacco Co.*, 192 So. 3d 1223, 1227 (Fla. 2016). The Court applies the

Florida statutory rate in calculating pre-judgment interest. *See* Fla. Stat. 55.03(3). The applicable rates and calculations are listed below.[2]

| Time Period | Statutory Rate Per Annum | Daily Rate | Number of Days | Total Amount |
|---|---|---|---|---|
| 6/4/18 to 6/30/18 | 5.72% | .0156712% | 27 | $2.12 |
| 7/1/18 to 9/30/18 | 5.97% | .0163562% | 92 | $7.52 |
| 10/1/18 to 12/31/18 | 6.09% | .0166849% | 92 | $7.67 |
| 1/1/19 to 3/31/19 | 6.33% | .0173425% | 90 | $7.80 |
| 4/1/19 to 4/12/19 | 6.57% | .0180000% | 12 | $1.08 |
| | | | **Grand Total** | **$26.19** |

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The Motion, **ECF No. [17]**, is **GRANTED in part**;

2. Pursuant to Fed. R. Civ. P. 58, a Final Default Judgment in favor of Plaintiff and against Defendant Burlington Inc. shall follow by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 12, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[2] The applicable rates are available at
https://www.myfloridacfo.com/Division/AA/LocalGovernments/Current.htm

Case No. 18-cv-81420-BLOOM/Reinhart

9