# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-cv-81420-BLOOM/Reinhart

CATHY COHEN,

     Plaintiff,

v.

BURLINGTON, INC.,

     Defendant.

_____/

### <u>OMNIBUS ORDER</u>

**THIS CAUSE** is before the Court upon Plaintiff Cathy Cohen's ("Plaintiff") Amended Motion to Amend Final Default Judgment to Remove Any Ambiguity of the Correct Defendant's Identity, ECF No. [33] ("Motion to Amend Judgment"), and Burlington Stores, Inc.'s ("BSI") and Burlington Coat Factory Warehouse Corporation's ("BCFWC") (collectively, "Movants")[1] Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure, ECF No. [47] ("Motion for Sanctions"), (collectively, the "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Plaintiff's Motion to Amend Judgment is denied, and Movants' Motion for Sanctions is granted in part and denied in part.

## I.    BACKGROUND

On October 19, 2018, Plaintiff initiated this action, asserting a negligence claim against Defendant Burlington, Inc. ("Defendant") arising from an incident at Defendant's retail store in Palm Beach County, Florida, on July 8, 2016. ECF No. [1] ¶¶ 7-8 ("Complaint"). In her Complaint,

---

[1] Movants are not named parties in the instant action.

Plaintiff alleged that one or more display tables at Defendant's store fell toward Plaintiff and struck her, causing severe medical injuries. *Id.* ¶¶ 11-13.

A Clerk's Default was entered against Defendant on January 16, 2019. ECF No. [9]. The Court held an evidentiary hearing on the issue of damages on March 29, 2019. ECF No. [16]. Then, on March 31, 2019, Plaintiff filed a Motion for Final Default Judgment, ECF No. [17], which the Court granted on April 12, 2019, ECF No. [19]. Final Judgment was therefore "entered in favor of Plaintiff Cathy Cohen and against Defendant Burlington Inc." on that day, and Plaintiff was awarded damages in the amount of $677,774.75, plus $26.19 in pre-judgment interest, ECF No. [20], and was further awarded $702.43 in taxable costs on May 7, 2019, ECF No. [23].

On July 19, 2019, Plaintiff moved for a writ of execution against "BURLINGTON INC. a/k/a BURLINGTON COAT FACTORY DIRECT CORPORATION," ECF No. [24], which the Clerk of Court issued on July 23, 2019, ECF No. [25]. Plaintiff then registered the Judgment Lien against "BURLINGTON, INC, and BURLINGTON COAT FACTORY DIRECT CORPORATION" with the Florida Secretary of State. ECF No. [33-1] at 53. On August 21, 2019, the Clerk of Court certified the Judgment to be registered in another district, *id.* at 90-93, and on September 7, 2019, Plaintiff's counsel mailed the certified Judgment, along with a New Jersey writ of execution, to the United States District Court for the District of New Jersey ("N.J. District Court"), *id.* at 91, which the N.J. District Court received on September 10, 2019, *id.* at 90. On September 12, 2019, the New Jersey writ of execution was issued, *id.* at 99-100, and the writ was levied against BSI's bank account on October 1, 2019, *id.* at 113-15, 64.

On October 7, 2019, BSI and BCFWC filed an emergency motion before the N.J. District Court for an order to show cause why the Judgment and the levies should not be vacated and why the writs of execution should not be quashed. *Id.* at 54-73. Ultimately, on October 24, 2019, the

N.J. District Court vacated the levies against BSI's bank account and quashed all writs directed to Movants' assets, but declined to vacate this Court's Final Judgment. *Id.* at 118-19. In the meantime, on October 11, 2019, Plaintiff moved before this Court to amend the Final Judgment to "remove any ambiguity of the correct Defendants' identity," ECF No. [26], which was later amended, ECF No. [33]. Plaintiff's amended motion is the Motion to Amend Judgment before the Court today. Further, on December 5, 2019, Movants filed their Motion for Sanctions under Rule 11 due to the misconduct of Plaintiff's counsel, Michael Gulisano, Esq. ("Mr. Gulisano"), throughout this action.[2] The Court will address each motion individually below.

## II. LEGAL STANDARD

### A. Motion to Amend Judgment Under Rule 60(b)

Federal Rule of Civil Procedure 60(b) states in relevant part:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> . . . .
> (6) [or] any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

"By its very nature, [Rule 60(b)] seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant

---

[2] Among other arguments, Plaintiff and Movants heatedly debate the issue of whether service was properly perfected in this case. Plaintiff argues that service was properly perfected on Defendants — which Plaintiff contends includes BSI and BCFWC — registered agent, CT Corporation. *See* ECF No. [5]. Movants, on the other hand, submit an affidavit from an employee of CT Corporation, which states that, after reviewing the documents served, CT Corporation sent Plaintiff's counsel a letter informing counsel that service was rejected and could not be forwarded to Defendant because CT Corporation did not represent any company named "Burlington, Inc." in the State of Florida and that no such entity was registered to do business in Florida. ECF No. [41-1]. Thus, Movants argue that Plaintiff's counsel knowingly misrepresented to the Court that service had been perfected on Defendant. *See* ECF No. [41]. Plaintiff's counsel, however, submits a declaration in response to Movants' argument, stating that he never received any such letter from CT Corporation. ECF No. [42-1].

command of the court's conscience that justice be done in light of all the facts.'" *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401 (5th Cir. 1981) (quoting *Bankers Mortg. Co. v. United States,* 423 F.2d 73, 77 (5th Cir. 1970)).[3] As such, "Rule 60(b) motions are directed to the sound discretion of the district court." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355 (11th Cir. 2009). Ultimately, "[a] Rule 60(b) Motion must be equitably and liberally applied to achieve substantial justice. . . . and a technical error or a slight mistake by [a party's] attorney should not deprive [the party] of an opportunity to present the true merits of his claims." *Blois v. Friday*, 612 F.2d 938, 940 (5th Cir. 1980).

Pursuant to Rule 60(b)(1), a court may grant relief from a judgment or order based upon "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "The determination of what constitutes excusable neglect is generally an equitable one, taking into account the totality of the circumstances surrounding the party's omission." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007). Further, "[u]nder Rule 60(b)(6) — the 'catchall provision' — a court may relieve a party from a final judgment for 'any other reason that justifies relief.'" *Albors Gonzalez v. Fed. Nat'l Mortg. Ass'n*, No. 19-10499, 2020 WL 464894, at *2 (11th Cir. Jan. 29, 2020) (quoting Fed. R. Civ. P. 60(b)(6)). As the Eleventh Circuit has explained, relief under Rule 60(b)(6) "is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). "A party seeking relief under Rule 60(b)(6) 'has the burden of showing that absent such relief, an "extreme" and "unexpected" hardship will result.'" *Albors Gonzalez*, 2020 WL 464894, at *2 (quoting *Griffin*, 722 F.2d at 680).

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit issued prior to October 1, 1981.

**B. Motion for Sanctions Under Rule 11**

Federal Rule of Civil Procedure 11 states in relevant part:

> **(b) Representations to the Court**. By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
> **(c) Sanctions.**
>> **(1) In General.** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Fed. R. Civ. P. 11(b)-(c).

"Rule 11 stresses the need for some prefiling inquiry." *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992). As such, it "imposes 'an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing,' and 'the applicable standard is one of reasonableness under the circumstances.'" *Walther v. McIntosh*, 572 F. App'x 881, 883 (11th Cir. 2014) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) ("Rule 11 . . . imposes an objective standard of reasonable inquiry."); *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996) ("[A] litigant's obligations with respect to the contents" of pleadings or motions "are not

measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." (quoting Fed. R. Civ. P. 11(b), (c) advisory committee's note to 1993 amendment)). The Rule "is 'aimed at curbing abuses of the judicial system.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990). To this end, it sets up a means by which litigants certify to the court, by signature, that any papers filed are well founded." *Bus. Guides, Inc.*, 498 U.S. at 542.

Rule 11 sanctions are intended to reduce frivolous claims, defenses, or motions and to deter the filing of baseless lawsuits. *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003). Accordingly, sanctions under Rule 11 are properly assessed

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Burgos v. Option One Mortg. Corp.*, 786 F. App'x 231, 233 (11th Cir. 2019) (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)). Further, Rule 11 emphasizes "the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (quoting Fed. R. Civ. P. 11 advisory committee note of 1993).

"Imposition of sanctions on the attorney rather than, or in addition to, the client is sometimes proper 'since it may well be more appropriate than a sanction that penalizes the parties for the offenses of their counsel.'" *See Jones v. Int'l Riding Helmets*, 49 F.3d 692, 694 (11th Cir. 1995). "If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *McGreal*, 87 F.3d at 1254 (citing *Jones*, 49 F.3d at 694). "[M]easured objectively, if a reasonable investigation would have

revealed the error to a reasonably competent attorney, then sanctions can be imposed; if not, then sanctions cannot be imposed. The reasonableness of the inquiry turns on the totality of the circumstances." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) (Tjoflat, J., concurring in appeal and dissenting in cross-appeal) (citing *McGreal*, 87 F.3d at 1254).

Thus, in assessing the propriety of sanctions under Rule 11, courts must conduct a two-part inquiry to determine "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001) (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)); *see also Rowe v. Gary*, 703 F. App'x 777, 779-80 (11th Cir. 2017) (footnote omitted).

## III. DISCUSSION

### A. Motion to Amend Judgment Under Rule 60(b)

Plaintiff's Motion to Amend Judgment requests that this Court amend its Final Judgment to reflect that the Final Judgment is entered against "Defendant Burlington, Inc. a/k/a Burlington Stores, Inc. a/k/a Burlington Coat Factory Warehouse Corporation," due to counsel's mistake, inadvertence, surprise, or excusable neglect, Fed. R. Civ. P. 60(b)(6), or any other reason that justifies relief, Fed. R. Civ. P. 60(b)(6). At the outset, it is worth noting that the relief Plaintiff seeks — namely, amending the Court's Final Judgment — is improper under Rule 60(b). A court "may *relieve* a party or its legal representative from a final judgment, order, or proceeding" for the reasons listed under Rule 60(b)(1)-(6). Fed. R. Civ. P. 60(b) (emphasis added). Rather than asking that this Court relieve her of the Final Judgment, Plaintiff is requesting that the Final Judgment be amended, which is relief more appropriately sought under Rule 60(a). *See* Fed. R. Civ. P. 60(a) ("Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a

judgment, order, or other part of the record.").[4] Nevertheless, in the interest of completeness, the Court will address Plaintiff's Motion to Amend Judgment as a motion seeking to vacate this Court's Final Judgment under Rule 60(b). *See Creative Tile Mktg., Inc. v. SICIS Int'l*, 922 F. Supp. 1534, 1536 (S.D. Fla. 1996) ("It is the general rule that default judgments are ordinarily disfavored because cases should be decided upon their merits whenever reasonably possible.").

Plaintiff first argues that she is entitled to relief under Rule 60(b)(1) due to her mistake, inadvertence, or excusable neglect in only naming "Burlington, Inc." as the Defendant in this case.[5] Pursuant to Rule 60(b)(1), a court may grant relief from a judgment or order based upon "mistake,

---

[4] The relief Plaintiff requests would also be improper under Rule 60(a) because, "[w]hile the district court may correct clerical errors to reflect what was intended at the time of ruling, "[e]rrors that affect substantial rights of the parties . . . are beyond the scope of rule 60(a)." *Weeks v. Jones*, 100 F.3d 124, 128-29 (11th Cir. 1996) (quoting *Mullins v. Nickel Plate Mining Co.*, 691 F.2d 971, 973 (11th Cir. 1982)); *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir. 1994) ("An error in a judgment that accurately reflects the decision of the court or jury as rendered is not 'clerical' within the terms of Rule 60(a)." (quoting Fed. R. Civ. P. 60(a)). "A district court is not permitted . . . to clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect." *Weeks*, 100 F.3d at 129 (quoting *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992)). "Courts will construe Rule 60(a) narrowly to 'bolster the finality of judgments and to block circumvention of more restrictive means to obtain review of orders and judgments in the district court.'" *Paladin Shipping Co. v. Star Capital Fund, LLC*, No. 10-cv-21612, 2014 WL 12685861, at *4 (S.D. Fla. Sept. 8, 2014) (quoting *In re Am. Precision Vibrator Co.*, 863 F.2d 428, 430 (5th Cir. 1989)). "If . . . cerebration or research into the law or planetary excursions into facts is required, Rule 60(a) will not be available to salvage the [party's] blunders. . . . Rule 60(a) is not a perpetual right to apply different legal rules or different factual analyses to a case." *Id.* (quoting *In re W. Tex. Mktg. Corp.*, 12 F.3d 497, 504-05 (5th Cir. 1994)).

[5] Alternatively, Plaintiff argues that relief is warranted under Rule 60(b)(6). The catchall provision under Rule 60(b)(6) states that a court may relieve a party from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1); *see Albors Gonzalez*, 2020 WL 464894, at *2. However, relief under Rule 60(b)(6) "is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Griffin*, 722 F.2d at 680. "Although 60(b)(6) provides a residual equitable authority for vacating judgments, [the Eleventh Circuit] consistently has held that 60(b)(1) and (b)(6) are mutually exclusive. Therefore, a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)." *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986) (citing *Hall v. Alabama*, 700 F.2d 1333, 1338 (11th Cir. 1983); *Gulf Coast Bldg. & Supply Co. v. Int'l Bhd. of Elec. Workers*, 460 F.2d 105, 108 (5th Cir. 1972)); *see also Sec. & Exch. Comm'n v. Simmons*, 241 F. App'x 660, 663 (11th Cir. 2007). Here, because the Court is being asked to consider Plaintiff's request for relief under Rule 60(b)(1) based on "mistake, inadvertence, surprise, or excusable neglect," it cannot grant relief pursuant to the catchall provision. Nevertheless, based on the discussion below, the Court concludes that Plaintiff has certainly failed to satisfy her burden of establishing the kind of "exceptional circumstances" in this case that would warrant relief under Rule 60(b)(6).

inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "The determination of what constitutes excusable neglect is generally an equitable one, taking into account the totality of the circumstances surrounding the party's omission." *Sloss Indus. Corp.*, 488 F.3d at 934.

Even setting aside all issues raised between Plaintiff and Movants with regard to whether service was perfected on BSI and BCFWC, the Court concludes that Plaintiff has failed to demonstrate any excusable neglect in this case. Specifically, Plaintiff argues that Movants' allegations that BSI and BCFWC were not named and thus are not subject to the Final Judgment are meritless because Plaintiff sued the Movants under their fictitious name — i.e., "Burlington, Inc." Tellingly, however, Plaintiff failed to include *any* allegations in her Complaint concerning an alleged fictitious name. *See generally* ECF No. [1].[6] Likewise, despite numerous opportunities during the course of this litigation, Plaintiff never sought to amend her Complaint to add allegations with regard to any fictitious name, nor did she at any point attempt to voluntarily dismiss this action without prejudice to initiate a new action against the intended entities.

Appallingly, the Court has not identified a single piece of evidence in the combined 425 pages of briefing and exhibits submitted to the Court on Plaintiff's Motion to Amend Judgment that substantiates the use of "Burlington, Inc." as the proper entity to be named in this action, either as a fictitious name or as a company authorized to conduct business in Florida. Instead, the provided exhibits reflect as follows: (1) the 2016 merger of "Burlington Coat Factory of Florida, LLC" with BCFWC, ECF No. [33-1] at 3; (2) the registration of the trademarks "Burlington" and

---

[6] "In suing under a fictitious business name, the pleader should state the [entity's] true name, followed by the fictitious business name." 1A Florida Pleading and Practice § 4:3. "A designation of 'd/b/a' or 'doing business as' is a designation to be used when the name following the d/b/a designation represents a fictitious name in which an individual or entity conducts business." *United States v. Mesadieu*, 180 F. Supp. 3d 1113, 1123 (M.D. Fla. 2016) (citing *Mastro v. Seminole Tribe of Fla.*, 578 F. App'x 801, 803 (11th Cir. 2014) (explaining that "doing business as" is used as "merely a fictitious name with no independent existence")). Notably, however, even "a 'd/b/a' designation standing alone is not sufficient to join an independent entity as a defendant in a lawsuit." *Id.*

"Burlington Stores" owned by BCFWC, *id.* at 24-29; (3) the 2013 registration of the fictitious names "Burlington" and "Burlington Coat Factory" owned by Burlington Coat Factory of Florida, LLC, *id.* at 32-34; (4) the 2019 registration of the fictitious name "Burlington" owned by BCFWC, *id.* at 30-31; (5) records from the Florida Department of State's Division of Corporations ("Division of Corporations") for "Burlington Coat Factory Direct Corporation," "Burlington Coat Factory of Florida, LLC," and BCFWC, *id.* at 46-51; (6) a Statement of Change of Registered Office or Registered Agent or Both for Limited Liability Company on behalf of "Burlington Coat Factory of Florida, LLC," *id.* at 52; (7) no entity registered as "Burlington, Inc." listed on the Division of Corporation's online records, ECF No. [41-9]; and (8) BSI's website and its Securities and Exchange Commission Form 10-K referring to itself as "Burlington," ECF No. [42-4]. Notably absent from any of these documents is the entity named as the Defendant in this action — i.e., "Burlington, Inc." Further, Plaintiff provides no explanation reconciling her argument that Movants were "sued in [their] fictitious/trade name" with the obviously contradictory evidence submitted to this Court. ECF No. [42] at 2.

Even more concerning is that counsel for the Plaintiff stood before the Court at the evidentiary hearing on damages on March 29, 2019 and at no time did counsel represent that the damages should be assessed against another entity other than the named Defendant, Burlington, Inc. In fact, it was counsel who requested that the Final Judgment be explicitly entered "in favor of Plaintiff Cathy Cohen and against Defendant Burlington Inc.," ECF No. [20]. Yet, in the motion for writ of execution, Mr. Gulisano sought a writ of execution against "Burlington Inc. a/k/a Burlington Coat Factory Direct Corporation," ECF No. [24], which was ultimately issued by the Clerk of Court, ECF No. [25]. Moreover, Mr. Gulisano then proceeded to record the judgment with Florida's Secretary of State and again listed both "Burlington, Inc," and "Burlington Coat

Factory Direct Corporation." ECF No. [33-1] at 53. In the Motion to Amend Judgment, Mr. Gulisano fails to provide the Court with *any* justification for why he included "Burlington Coat Factory Direct Corporation" in the motion for writ of execution when no such entity was named in the Final Judgment issued by the Court.[7] Mr. Gulisano cannot use his alleged ignorance of Movants' corporate form as both a sword and a shield to simultaneously claim that, throughout the course of the proceedings in this case, he believed that he properly named Movants' fictitious name, despite not including any d/b/a or allegations regarding the fictitious name in the Complaint, while also arguing in response to Movants' Motion for Sanctions that the inclusion of a d/b/a provision in the writ of execution post-judgment was to clarify the different names the "Burlington" entities use.[8]

Like the motion for writ of execution, it is clear that the instant Motion to Amend Judgment is a back-door attempt to correct an improperly named party and recover a $677,774.75 default judgment plus costs from the intended, but unnamed, entities without having to litigate the matter any further. The Court will not tolerate such an abuse of the judicial process. Plaintiff is therefore

---

[7] This disingenuous inclusion of "Burlington Coat Factory Direct Corporation" clearly rebuts any arguments by Mr. Gulisano that he mistakenly named the wrong party when initiating this action and did not learn of his mistake until the events leading up to the Motion to Amend Judgment. As explained above, there were numerous opportunities to join the proper entities during the course of the proceedings in this case, but Mr. Gulisano chose not to do so. Instead, Plaintiff's counsel chose to commit fraud on this Court by attempting — and succeeding — to surreptitiously add an additional entity into the motion for writ of execution from whom he wished to try and collect. This blatant misrepresentation facilitated all of the subsequent events in this case, which ultimately resulted in Plaintiff successfully levying the fraudulent writ of execution against BSI's bank account in New Jersey.

[8] Moreover, basic concepts on corporate form seem to elude Mr. Gulisano. In particular, Mr. Gulisano has inconsistently applied his "fictitious name" argument to various, independent entities throughout these proceedings, thus further elucidating the argument's lack of merit. Indeed, despite the fact that BSI, BCFWC, and Burlington Coat Factory Direct Corporation are all separate legal entities, Mr. Gulisano seemingly refers to all three companies under the umbrella of "Burlington," along with the non-existent entity, "Burlington, Inc.," without any distinction based on their separate corporate forms. However, corporations are legal entities that "should sue and be sued in their corporate name," and "the corporate name must be strictly used" in pleadings. *RHPC, Inc. v. Gardner*, 533 So. 2d 312, 314 (Fla. 2d DCA 1988); *see also Smith v. Panera Bread*, No. 08-60697-CIV, 2009 WL 10667094, at *1 (S.D. Fla. Mar. 23, 2009).

not entitled to any relief under Rule 60(b) because any alleged mistake, inadvertence, or neglect in this case is both entirely without justification and completely inexcusable. Accordingly, Plaintiff's Motion to Amend Judgment is denied.

## B. Motion for Sanctions Under Rule 11

In response to the events arising from and relating to the Motion to Amend Judgment, Movants request that this Court impose Rule 11 sanctions on Mr. Gulisano for the repeated misrepresentations to the Court throughout this litigation and for filing and continuing to defend the frivolous Motion to Amend Judgment. Movants also request that this action be dismissed with prejudice. Mr. Gulisano, in the response submitted on behalf of Plaintiff, denies any alleged misconduct and requests that this Court award Plaintiff fees and costs incurred since October 7, 2019, pursuant to 28 U.S.C. § 1927,[9] "for [Movants'] unreasonable and vexatious multiplication of the proceedings or, in light of the instant motion, which is without merit, pursuant to Fed. R. Civ. P. 11." ECF No. [48] at 17.

In resolving the question of whether sanctions are appropriate under Rule 11, the Court performs a two-part inquiry to determine "(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Byrne*, 261 F.3d at 1105 (citing *Baker*, 158 F.3d at 524). "A legal claim is frivolous if no reasonably competent attorney could conclude that it has any 'reasonable chance of success' or is a reasonable argument to change existing law." *Thompson*, 610 F.3d at 665 (citing *McGreal*, 87 F.3d at 1254; *McGregor v. Bd. of Comm'rs of Palm Beach Cty.*, 956 F.2d 1017, 1022 (11th Cir. 1992)). Similarly, "[a] factual claim is frivolous if no reasonably competent attorney could

---

[9] *See* 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only 'patently frivolous' evidence is offered to support factual contentions, sanctions can be imposed." *Id.* (citing *Davis v. Carl*, 906 F.2d 533, 535-37 (11th Cir. 1990) (noting that the imposition of Rule 11 sanctions based on groundless factual allegations are only appropriate where "plaintiffs offer[] *no* evidence to support their allegations")); *see also Lawson v. Sec'y, Dep't of Corr.*, 563 F. App'x 678, 680 (11th Cir. 2014).

> Once a court concludes that either the factual or legal contentions are frivolous, the question becomes whether the attorney should have known they were frivolous. [*McGreal*], 87 F.3d at 1254. [Courts] ask what was known or reasonably knowable when the paper was "present[ed] to the court." Fed. R. Civ. P. 11(b). Again, measured objectively, if a reasonable investigation would have revealed the error to a reasonably competent attorney, then sanctions can be imposed; if not, then sanctions cannot be imposed. The reasonableness of the inquiry turns on the totality of the circumstances, including, for example, the time available for investigation and whether the attorney had to rely on the client, another member of the bar, or others. [*McGreal*], 87 F.3d at 1254.
>
> Rule 11(b)(1) sanctions are appropriate when an attorney or party presents a paper for an improper purpose. Improper purpose is often inferred from circumstantial evidence. For example, it can be inferred from "'excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings.'" *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998) (quoting *Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 690-91 (M.D. Fla. 1992)). A "motive to harass" can also be inferred from an attorney's filing of factually or legally frivolous claims. *Cf. Carr v. Tillery*, 591 F.3d 909, 919-20 (7th Cir. 2010).

*Thompson*, 610 F.3d at 665-66. Likewise, a party's "continued reliance on fraudulent documents clearly runs afoul of Rule 11 and sanctions . . . are appropriate for [the party's] bad faith conduct." *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1345 n.10 (S.D. Fla. 2016), *aff'd*, 708 F. App'x 998 (Fed. Cir. 2017).

With regard to the first inquiry, the Court finds Mr. Gulisano's conduct in this case to be objectively frivolous. In particular, it is beyond dispute that adding an independent and distinct legal entity to a motion for writ of execution that was neither referenced at any point in the litigation nor explicitly listed in the Court's Final Judgment is both frivolous and dishonest. This

is aggravated by the complete absence of any evidence that is not "patently frivolous" to substantiate the allegedly mistaken belief that the entity named in the pleadings is the fictitious name of the entity added. *Thompson*, 610 F.3d at 665. Additionally, attempting to conflate various distinct corporate entities in order to recover an award of damages obtained through a default judgment against a non-existent corporate entity is an objectively legally frivolous claim because "no reasonably competent attorney could conclude that it has any 'reasonable chance of success' or is a reasonable argument to change existing law." *Id.* Moreover, a party's continued reliance on a fraudulent writ of execution in attempting to collect on a Final Judgment against an unrelated entity that was not involved in the litigation is the kind of bad faith conduct that "clearly runs afoul of Rule 11." *Edge Sys. LLC*, 186 F. Supp. 3d at 1345 n.10. As such, the Court concludes that the factual and legal contentions asserted here are objectively frivolous.

Turning to the question of whether, objectively, Mr. Gulisano should have known that these claims were frivolous, the Court also concludes that this prong of the Rule 11 inquiry is satisfied. Importantly, "[i]f the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *McGreal*, 87 F.3d at 1254 (citing *Jones*, 49 F.3d at 694). In addition to Mr. Gulisano's woefully deficient investigation pre-suit to determine the proper entity to sue, and the entity's actual, correct corporate name, Mr. Gulisano has also repeatedly and undeniably acted in bad faith during the course of his post-judgment investigation in attempting to collect on the Final Judgment. Specifically, as already noted, Mr. Gulisano submitted a motion for writ of execution to this Court naming "BURLINGTON INC. a/k/a BURLINGTON COAT FACTORY DIRECT CORPORATION," ECF Nos. [24] & [25], which he then registered as a perfected Judgment Lien with the Secretary of State, ECF No. [33-1] at 53. Further, Mr. Gulisano used "the EIN numbers for 'Burlington

Stores, Inc.' and 'Burlington Coat Factory Direct Corporation,'" neither of which was the Defendant named in the Final Judgment, in conducting an asset search to locate bank accounts upon which to levy the writ of execution. ECF No. [26] at 5. These asset searches revealed bank accounts in New Jersey that were maintained by BSI and Burlington Coat Factory Direct Corporation. Thereafter, Mr. Gulisano successfully proceeded to levy the writ of execution against BSI's account. Even after being alerted to the potential impropriety of his collection efforts, Mr. Gulisano continued to persistently assert claims that Plaintiff was entitled to collect her award from any of the "Burlington" entities — i.e., BSI, BCFWC, or Burlington Coat Factory Direct Corporation — despite not having been named in this action or in the Final Judgment. Even a cursory inquiry, however, would have revealed to Mr. Gulisano that "Burlington, Inc." was not an existing entity in Florida. Likewise, a brief investigation into the registered entities in Florida relating to the name "Burlington" would have revealed the proper entities to sue, and Mr. Gulisano's post-judgment investigation did in fact reveal one such entity, which he listed in his motion for writ of execution. Therefore, it is abundantly clear that Mr. Gulisano should have known, and seemingly did know, that the claims he asserted during these proceedings were objectively and patently frivolous.

Ultimately, Rule 11 sanctions are intended to reduce frivolous claims, defenses, or motions and to deter the filing of baseless lawsuits, *Kaplan*, 331 F.3d at 1255, and, as such, sanctions under this Rule are properly assessed "when the party files a pleading[, written motion, or other paper] in bad faith for an improper purpose," *Burgos*, 786 F. App'x at 233 (quoting *McGreal*, 87 F.3d at 1254). Rule 11 emphasizes "the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable." *Peer*, 606 F.3d at 1311 (quoting Fed. R. Civ. P. 11 advisory committee note of 1993). Where, as here, an attorney makes affirmative

misrepresentations in his submissions to the Court, and those improper submissions are then later used to recover and collect a Judgment in the amount of $677,774.75, plus interest and costs, from a party against whom the Final Judgment was not entered, such conduct rises to the level of bad faith conduct that warrants the imposition of sanctions. Likewise, continuing to argue Plaintiff's entitlement to collect the Final Judgment amount from corporate entities not named or involved in the instant action by filing and defending the instant Motions, despite the utter lack of legal or factual support, is precisely the type of conduct subject to Rule 11's duty of candor. *Peer*, 606 F.3d at 1311.[10] Accordingly, the Court concludes that the imposition of Rule 11 sanctions against Mr. Gulisano for the events discussed above is appropriate under these circumstances.

In addition to the requirements set forth in Rule 11, the Rules Regulating the Florida Bar impose additional ethical requirements on attorneys practicing in Florida. First, like Federal Rule of Civil Procedure 11, Rule 4-3.1 of the Rules Regulating the Florida Bar states: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in

---

[10] Notably, rather than withdrawing a claim he knew was frivolous, Mr. Gulisano does quite the opposite. In addressing Movants' arguments — which he couches as "Gripes [] Without Merit" — Mr. Gulisano continues to assert the false argument that he properly sued BSI and BCFWC by bringing the instant action against their fictitious name, "Burlington," even though the named Defendant in this action was actually "Burlington, Inc." ECF No. [48] at 11. Mr. Gulisano also raises additional baseless arguments unsupported by any citations to legal authority, alleging that, "[f]or the matters and functions alleged and relevant to this action and [Plaintiff's] injuries," all of the "Burlington" entities are merely alter egos. *Id.* at 16. Likewise, rather than diligently assess the merits of the claims asserted, Mr. Gulisano continues to rattle off frivolous arguments in response to the Motion for Sanctions, stating, for example, that (1) counsel's inclusion of Burlington Coat Factory Direct Corporation on the writ of execution was "not to defraud, but simply to provide guidance to the notoriously fickle banks being levied against," *id.* at 14, as Plaintiff had no way of knowing how the accounts were titled (despite using the EIN numbers for BSI and Burlington Coat Factory Direct Corporation to locate such assets); (2) Sanctions are not warranted because the amount of damages in question here is insignificant to Movants, as it is less than 1% of Movants' annual profits, whereas the recovery of such an award is very significant to Plaintiff, who lives paycheck to paycheck; and (3) If Movants believe they have been wronged, their remedy would have been to file an appeal (even though they are not parties to the instant action and the time within which to appeal has long passed). The Court need not waste limited judicial resources to address these arguments, given their obvious lack of merit. Nonetheless, as these additional arguments make clear, Mr. Gulisano has continued to assert frivolous claims throughout these proceedings that are entirely at odds with the obligations set forth in Rule 11.

law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law." Rules Regulating the Fla. Bar, Rule 4-3.1 ("Fla. Bar R."). Likewise, Rule 4-8.4 requires that a lawyer not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Fla. Bar R. 4-8.4(c). Furthermore, Rule 4-3.3 imposes a duty of candor to the tribunal on all attorneys practicing in Florida: "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer," and this duty "continue[s] beyond the conclusion of the proceeding." Fla. Bar R. 4-3.3(a)(1), (d).

Consistent with the Court's extensive discussion above, Mr. Gulisano's conduct has violated his ethical obligations under the Rules Regulating the Florida Bar. Mr. Gulisano's inclusion of Burlington Coat Factory Direct Corporation, an entity that was not a party to this litigation and was not named in the Final Judgment, on the motion for writ of execution filed before the Court was an affirmative misrepresentation that sought to fraudulently expand the entities from which Plaintiff could recover the awarded damages. This affirmative misrepresentation to the Court clearly violates the ethical requirements of Rules 4-3.3(a)(1) and 4-8.4(c). Likewise, in continuing to pursue the frivolous claims asserted in the instant proceedings, while ignoring the total absence of any basis in law or fact, Mr. Gulisano violated his obligation to assert only meritorious claims and contentions under Rule 4-3.1.

The Court ultimately concludes that the totality of circumstances in this case clearly warrant the imposition of sanctions against Mr. Gulisano. Mr. Gulisano's conduct demonstrated a complete disregard for the rule of law and the procedures litigants must adhere to in federal court. Mr. Gulisano's conduct also exhibited a fundamental lack of understanding, if not complete incompetence, regarding basic legal principles, such as, for example, those regarding corporate

entities. As a direct result of Mr. Gulisano's egregious conduct, a writ of execution was levied on funds in BSI's bank account, which in turn forced BSI and BCFWC to incur significant costs and attorney's fees to vacate the levies and quash the writs in New Jersey, and to defend against Plaintiff's Motion to Amend Judgment and file Movants' Motion for Sanctions before this Court. In light of Mr. Gulisano's serious fraudulent conduct during the course of these proceedings, Movants' request that sanctions be imposed against Mr. Gulisano requiring him to pay all attorney's fees and costs that Movants incurred is granted. To the extent that Movants request that the instant action be dismissed with prejudice, however, the Court sees no reason to dismiss this action, as "Burlington, Inc." is not an entity in existence in Florida. Thus, this request is denied. Further, Plaintiff's request for sanctions under 28 U.S.C. § 1927 in response to Movants' Motion for Sanctions clearly warrants no discussion. This request is denied. Finally, given the serious, repeated, and deeply concerning behavior exhibited by Plaintiff's counsel during this litigation, the Court is obligated to refer Mr. Gulisano to the Florida Bar for any disciplinary action deemed appropriate.

In conclusion, the Court reemphasizes that, "as officers of the court, attorneys are servants of the law rather than servants of the highest bidder." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1547 (11th Cir. 1993).

> The duty of candor is an important part of our justice system for several reasons. First, . . . the duty of candor is an integral part of ensuring that our system of justice functions properly because first and foremost an attorney is an officer of the court, an institution whose purpose is to seek the truth in order to do justice. *See* [*Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546 (11th Cir. 1993).] Second, the duty of candor is important to providing clients with an attorney's "independent professional judgment" so as to not create unreasonable client expectations, which when dashed can undermine confidence in the justice system. *See* Fla. Bar Rule 4-2.1. Third, the duty of candor helps promote judicial efficiency and avoid crowding the court's docket with frivolous actions. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (stating that the purpose of Rule 11 is to deter baseless filings in district court and streamline administration and procedure).

*Bautista v. Star Cruises*, 696 F. Supp. 2d 1274, 1281 (S.D. Fla. 2010).

**IV.   CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Amend Judgment, **ECF No. [33]**, is **DENIED**.

2. The Writ of Execution, **ECF No. [25]**, is **VACATED**. Plaintiff is ordered to have the Judgment Lien against Burlington, Inc. and Burlington Coat Factory Direct Corporation removed from Florida public records. **On or before March 30, 2020**, Plaintiff is directed to file a notice before this Court swearing that the Judgment Lien has been removed from the public records and providing documentation substantiating this removal. **Failure to timely comply will result in the imposition of appropriate sanctions.**

3. Movants' Motion for Sanctions, **ECF No. [47]**, is **GRANTED in part and DENIED in part**. Movants shall be entitled to recover from Plaintiff's counsel, Michael Gulisano, Esq., all of the expenses, including attorney's fees and costs, incurred in responding to and defending the instant Motions. Movants' counsel shall submit an affidavit providing an itemized list of the amount sought within fourteen (14) days of the date of this Order. Further, Plaintiff's request for sanctions under § 1927 is **DENIED**.

4. Michael Gulisano, Esq. is **REFERRED** to the Florida Bar for any disciplinary action or treatment deemed appropriate.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 2, 2020.

BETH BLOOM
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record